**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
|    WYATT E. BITTS, | : | |
| | : | Bky. No. 07-16025 ELF |
|          Debtor | : | |

## M E M O R A N D U M

### I.  INTRODUCTION

Bowman Transportation, LLC ("Bowman"), a creditor in this chapter 7 bankruptcy case, has filed a Motion for Extension of Time to File an Objection to the Debtor's Discharge And/Or the Dischargeability of a Debt ("the Extension Motion") pursuant to Fed. R. Bankr. P. 4004(b) and 4007(c).  In the Extension Motion, Bowman requested additional time to file an adversary complaint to obtain a determination that its claim against Debtor Wyatt E. Bitts ("the Debtor") is nondischargeable pursuant to 11 U.S.C. §523 and to object to the Debtor's discharge pursuant to 11 U.S.C. §727.  Bowman has since abandoned the request for additional time to object to the Debtor's discharge, see Bowman's Brief in Support of Extension Motion at 1, leaving at issue only the request for an extension of time for a dischargeability determination.

Because I conclude that Bowman has met its burden of establishing cause for the extension of time it seeks, I will enter an order granting Bowman's Extension Motion.

## II.  BACKGROUND

### A.

The issue the Extension Motion raises -- i.e., whether Bowman has established cause for an extension of time -- is relatively straightforward and, consequently, one might expect that it could be determined summarily.  The background against which this particular Extension Motion is made, however, is a bit more complex.

The parties' dispute is rooted in the Debtor's allegedly wrongful refusal to turn over possession of a 2000 Freightliner truck ("the Truck") to Bowman.  There is extensive history to the battle to obtain ownership and possession of this particular Truck.  Accordingly, to put both Bowman's Extension Motion and my ruling in context, it is helpful to first review some of that history as succinctly as possible.

The Truck was originally owned by William Grove.  It appears that the Debtor, through a financing company known as Commerce Commercial Leasing ("CCL"), was the first party to attempt to purchase the Truck from Mr. Grove.  The parties hotly contest whether the Debtor defaulted on his payment obligation to Mr. Grove, giving Mr. Grove cause to repossess the Truck, or whether, to the contrary, Mr. Grove breached his agreement with the Debtor by thereafter selling the Truck to Bowman.  These disputes resulted in the Debtor, Bowman, Mr. Grove and/or CCL each asserting entitlement to either ownership and/or possession of the Truck at one time or another.  The parties' disputes have been playing out for over two (2) years in three (3) pieces of prepetition litigation all initiated in the Court of Common Pleas, Lancaster County ("the CP Court").

**B.**

**The Debtor's Replevin Action**

The first piece of litigation, i.e., Wyatt E. Bitts v. William W. Grove III, Case No. CI-05-09098 (C.P. Lancaster Cty.) ("the Debtor's Replevin Action"), was a replevin action originally brought by the Debtor against Mr. Grove.  See Exhibit B-1, M-1.  Bowman was later added as a defendant.

The Debtor commenced the Debtor's Replevin Action on October 17, 2005.  The next day, October 18th, the Debtor obtained an ex parte writ of seizure[1] and, on or about October 19th, regained possession of the Truck from Mr. Grove.[2]

Mr. Grove filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code on October 15, 2005.  See Bankruptcy No. 05-29097 (Bankr. E.D. Pa.).[3]  A few weeks later, on November 3, 2005, Mr. Grove removed the Debtor's Replevin Action to the bankruptcy court.  See Adversary No. 05-2354.  The Debtor filed a Motion to Remand the removed action and Mr.

---

[1] A writ of seizure is a remedy available in a replevin action in Pennsylvania pursuant to which a plaintiff may obtain possession of property upon a prima facie showing of entitlement and the posting of a bond.  Such relief may be granted before trial and a final judicial determination of the merits of the plaintiff's case.  The court has the authority to issue a writ of seizure ex parte. See Pa. R. Civ. P. 1075, 1075.2 - 1077; 17 Standard Pennsylvania Practice 2d §§96:2, 96:78, 96:86, 96:88, 96:101 (Westlaw 2008).

[2] Bowman contends that the deputy sheriff who executed the writ of seizure acted in violation of the Rules of Court when he turned over possession of the Truck to the Debtor.  Bowman argues that the sheriff should have retained possession of the Truck after executing the writ of possession on October 19th, and should not have turned over possession to the Debtor.

[3] That Mr. Grove filed for bankruptcy protection on October 15th raises the obvious question of whether the commencement of the Debtor's Replevin Action and repossession of the Truck violated the automatic stay, 11 U.S.C. §362(a).  I need not and do not decide the issue at this time.

Grove and Bowman filed Motions to Dismiss the Replevin Action. See Bankruptcy No. 05-29097, Docket Entry Nos. 14, 21. On November 4, 2005, after a hearing at which Mr. Grove, the Debtor, a representative from Bowman and others gave testimony, the bankruptcy court dismissed the Debtor's Replevin Action with prejudice.[4] See id., Docket Entry No. 24.

Notwithstanding the bankruptcy court's dismissal of the Debtor's Replevin Action, the Debtor remained in possession of the Truck.

## C.

**Bowman's Replevin Action**

The second piece of prepetition litigation is captioned Bowman Transportation v. Wyatt E. Bitts v. Commerce Commercial Leasing, LLC, No. CI-05-10062 (C.P. Lancaster Cty.) ("Bowman's Replevin Action"). On November 16, 2005, twelve (12) days after the bankruptcy court dismissed the removed Debtor's Replevin Action, Bowman filed its own replevin action against the Debtor (who, so as not to confuse the reader, was not yet a "bankruptcy debtor" because his bankruptcy case – the present case – was not filed until 2007). See Exhibit B-2, M-2. CCL, the Debtor's financing company, was later added as a defendant.

In Bowman's Replevin Action, Bowman did not seek an ex parte writ of seizure. Instead, the CP Court held preliminary hearings on Bowman's request for a writ of seizure on January 19, 2006 and February 15, 2006.[5] Subsequently, the CP Court entered an order on March 30, 2006

---

[4] Jacques Geisenberger, counsel for Bowman on the pending Extension Motion, was also counsel for Bowman at the hearing in the bankruptcy court.

[5] Mr. Geisenberger represented Bowman at these hearings.

granting Bowman's request for the writ of seizure. Pursuant to the March 30th Order, Bowman posted the appropriate replevin bond and obtained possession of the Truck from the Debtor on or about April 10, 2006. By this time, the Debtor had been in possession of the Truck for close to six (6) months since the bankruptcy court's dismissal of the Debtor's Replevin Action (i.e., from October 19, 2005 to April 10, 2006).

Before the CP Court could hold a final hearing and make a final determination on the merits of Bowman's Replevin Action, the CP judge assigned to the case became incapacitated, causing a delay in the proceedings. See Exhibit M-2, entry 8/30/07. Thereafter, while the case was awaiting reassignment to a new judge, Bowman's Replevin Action was stayed by the Debtor's October 15, 2007 bankruptcy filing.[6]

**D.**

**The Declaratory Judgment Action**

The third and last relevant, prepetition lawsuit was commenced by the Debtor on December 7, 2005. See Wyatt E. Bitts v. Commerce Commercial Leasing, LLC, and Bowman Transportation), CI-05-10784 (C.P. Lancaster Cty.) ("the DJ Action"). Originally filed as an action concerning vehicle title, this action was converted by the Debtor on December 16, 2005 to a declaratory judgment action against Bowman and CCL[7] to determine ownership rights to the

---

[6] The Debtor filed a Suggestion of Bankruptcy in the CP Court on January 16, 2008. On April 1, 2008, CCL was dismissed with prejudice in the Bowman Replevin Action. See Exhibit B-4.

[7] On October 31, 2006, the DJ Action was marked settled as it related to the claims of the Debtor against CCL. See Exhibit B-3, M-3.

Truck.  See Exhibit B-3, M-3.[8]  This action is still pending in the CP Court.

### III. PROCEDURAL HISTORY OF THE BANKRUPTCY CASE

Fast forwarding to the commencement and procedural history of this bankruptcy case, when the Debtor filed his petition for bankruptcy relief under chapter 7 of the Bankruptcy Code on October 15, 2007, he listed Bowman in his accompanying schedules as an unsecured, nonpriority creditor with respect to a "business debt" of $47,000.00.  See Docket Entry No. 1, Schedule F.  While not conceding the accuracy of the amount, Bowman interprets Schedule F as disclosing the disputed debt that arose from the Debtor's allegedly wrongful retention of the Truck from October 19, 2005 (i.e., the date upon which the Debtor gained possession of the Truck from Mr. Grove pursuant to the ex parte writ of seizure the Debtor obtained in the Debtor's Replevin Action) to April 10, 2006 (i.e., the date upon which Bowman gained possession of the Truck pursuant to the writ of seizure it obtained in Bowman's Replevin Action).[9]  It is this "business debt" that Bowman seeks to have liquidated and declared nondischargeable.

As a scheduled creditor in this case, Bowman received notice of the pertinent deadline for opposing dischargeability.  Specifically, on November 6, 2007, a notice issued that the first meeting of creditors, see 11 U.S.C. § 341, would be held on December 3, 2007.  See Docket

---

[8]     The docket entries reflect that Mr. Geisenberger represents Bowman in the DJ Action.

[9]     See Extension Motion, ¶2.  But see Debtor's Response to Extension Motion, ¶ 2 (denying debt was incurred "solely as a result of Debtor's failure to turn over possession of a truck").

Entry No. 11. This same notice advised creditors that the last day to oppose discharge or dischargeability was February 1, 2008. Id. It is undisputed that Mr. Geisenberger received this notice and that someone from Mr. Geisenberger's office attended the meeting of creditors and examined the Debtor on Bowman's behalf.

Three (3) days before the deadline for filing objections to dischargeability (i.e. on January 29, 2008), Bowman filed two (2) motions. The first was a Motion to Modify the Automatic Stay ("the Stay Motion"). See Docket Entry No. 16. The second was the current Extension Motion to extend the time to file a nondischargeability complaint. See Docket Entry No. 17.

I will review the contentions the parties made with respect to the Stay Motion because these contentions are relevant to my disposition of the Extension Motion.

**A.**

**The Stay Motion**

In the Stay Motion, Bowman summarized the history of the Bowman Replevin Action and the DJ Action and contended that cause existed to modify the automatic stay and permit Bowman to continue to litigate these still-pending actions. See Docket Entry No. 16. Specifically, Bowman argued that it could not terminate its liability on the replevin bond (or the premium on the bond) it posted to obtain possession of the Truck in the Bowman Replevin Action until the issue of entitlement to possession of the Truck had been finally decided. Bowman urged that, because the CP Court was already well-vested in the disputed issues, having held several hearings concerning the Truck and having issued a preliminary ruling on possession, the bankruptcy court should modify the stay imposed by 11 U.S.C. §362(d) to permit the parties

7

to proceed to a final determination of these issues in the CP Court. At the same time, Bowman requested that the bankruptcy court (and not the CP Court) retain jurisdiction to award any damages.

The Debtor filed its response to Bowman's Stay Motion on February 18, 2008. See Docket Entry No. 19. In his response, the Debtor consented to the entry of an order granting relief from the stay to permit Bowman to litigate issues of possession and ownership in the CP Court, but also stated that he did "not consent to a determination of damages until such time [as] this Court enters an Order in response to [Bowman]'s request to extend the time to file a Complaint Objecting to Discharge of Debtor." See Response to Stay Motion ¶3.

On February 20, 2008, this court entered an Order that provided:

> [T]he Stay imposed by Section 362 is terminated and Bowman [] is permitted to proceed with [the Bowman Replevin Action and the DJ Action] limited to the issue of who is entitled to possession of and then who owns the 2000 Freightliner Truck, but not the amount of damages, if any, to which either Bowman [] or Debtor may be entitled . . ., [] which damage issue shall remain within the jurisdiction of the Court.

See Docket Entry No. 23.

**B.**

**The Extension Motion**

Contemporaneously with the filing of the Stay Motion on January 29, 2008, Bowman filed the Extension Motion, stating that it needed further information from the Debtor, the Debtor's counsel, the chapter 7 trustee, or a formal Rule 2004 examination before it could determine whether to file an adversary complaint seeking a dischargeability determination or

objecting to discharge. See Extension Motion, ¶¶ 7-8. The Debtor opposed the Extension Motion, see Docket Entry No. 22,[10] and the matter was scheduled for an April 9, 2008 hearing.

Two (2) days before the hearing (i.e., on April 7, 2008), Bowman filed its nondischargeability complaint ("the §523(a) Complaint") against the Debtor. See Adversary No. 08-00088, Docket Entry No. 1. The §523(a) Complaint is five (5) pages long, contains twenty three (23) paragraphs and states two (2) counts, one under 11 U.S.C. §523(a)(2) and the other under §523(a)(6).

A hearing was held on the Extension Motion on April 9, 2008 at which both parties offered argument and introduced exhibits into the record.[11] Subsequently, both parties have submitted post-hearing memoranda. Consequently, the Extension Motion is ripe for disposition.

## IV.  RULE 4007(c)

Fed. R. Bankr. P. 4007 governs the time for filing a complaint to determine the dischargeability of a debt. Rule 4007(c), which governs such filings in chapter 7 cases, provides that:

---

[10]  In addition to opposing the Extension Motion, the Debtor included in its Response a request that the Debtor be awarded fees and costs of $2,500.00 for defending the Extension Motion and traveling to Philadelphia. See Debtor's Response to Extension Motion ¶13. This request is addressed in Part VI.D., infra.

[11]  Those exhibits included certified and web-printed copies of the state court dockets for the three prepetition actions (Exhibits D-1, D-2, D-3, M-1, M-2, M-3), a pretrial conference memorandum that Mr. Geisenberger filed in Bowman's Replevin Action (Exhibit B-4), and a court order dismissing CCL with prejudice from the Bowman Replevin Action (Exhibit M-4). At the parties' request, I also took judicial notice of the filings in Mr. Grove bankruptcy (Bankr. No. 05-29097) and the relevant adversary proceeding in the Grove bankruptcy (Adv. No. 05-2354).

> A complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a). . . . On motion of a party in interest, after a hearing on notice, <u>the court may for cause extend the time fixed under this subdivision.</u>  The motion shall be filed before the time has expired.

Id. (emphasis added).

"Cause" for an extension of the deadline to object to dischargeability of a debt is not defined in the Bankruptcy Code or the Rules, and is, therefore, ultimately left to the court's discretion.  E.g. In re Bates, 2008 WL 118002, at *1 (Bankr. D.N.M. Jan. 11, 2008).  Several courts have identified factors that may be considered in the determination of whether a creditor has stated cause for an extension of time.  Those factors have included:

1. whether the Debtor refused in bad faith to cooperate with the creditor,

2. whether the creditor had sufficient notice of the deadline and the information to file an objection,

3. whether the proceedings pending in another forum might result in collateral estoppel on the relevant issues,

4. whether the creditor exercised diligence, and

5. the complexity of the case.

See In re Stonham, 317 B.R. 544, 548 n. 1 (Bankr. D. Color. 2004) (collecting cases).  However, as the court observed in In re Stonham, 317 B.R. at 547-8, "the determination of 'cause' by its very nature is fact driven and thus, must be analyzed on a case by case basis."  Id.

With these principles in mind, I examine the parties' arguments.

## V.  CONTENTIONS OF THE PARTIES

In the Extension Motion, Bowman asserted that cause for an extension of time to file a §523(a) adversary complaint existed because its counsel could not advise Bowman whether to pursue a nondischargeability action until it had, <u>inter alia</u>, the opportunity to examine the Debtor pursuant to Fed. R. Bankr. P. 2004.  <u>See</u> Extension Motion, at ¶¶7-8.  In other words, the Extension Motion articulated a traditional ground for satisfying the "cause" requirement -- <u>i.e.</u>, that the creditor needed additional time to investigate whether it had a viable nondischargeability claim.

Perhaps not surprisingly, in light of the extensive litigation that had already taken place between the parties and the filing of the §523(a) Complaint two days earlier, at the April 9th hearing, for the most part, Bowman did not press for the extension based on a need for further discovery.[12]  Rather, Bowman articulated, somewhat more explicitly, the rationale that motivated it to file the Stay Motion and Extension Motion simultaneously and also offered new reasons for the requested extension of time, as follows:

> 1.  the economy that may be achieved by staying all activity in bankruptcy court (including the filing of a nondischargeability complaint) until the state court determines the right to ownership and possession of the Truck.
>
> 2.  an unexpected staffing shortage in the office of its counsel, Mr. Geisenberger;

---

[12]   I qualify the statement in the text because, at the hearing, Bowman's counsel articulated a variant of the argument expressed in the Extension Motion.  Bowman asserted that the deputy sheriff who enforced the writ of seizure in the Debtor's Replevin Action should not have given the Truck to the Debtor and that manner in which the Debtor came into possession of the Truck lawfully in October 2005 (after the CP Court in the Debtor's Replevin Action issued the <u>ex parte</u> writ of seizure) and its lawfulness is relevant to Bowman's potential nondischargeability claims.  In connection with this theory, Bowman stated its need to take the deposition of the deputy sheriff, who is presently unavailable because he is on military duty in Iraq.

    3. the necessity of obtaining a final judgment in the CP Court on the issue of Bowman's ownership and entitlement to possession of the Truck before it could file a nondischargeability complaint based on the Debtor's allegedly wrongful failure to turn over possession; and,

In contrast, the Debtor's position on the Extension Motion is that because Mr. Geisenberger represented Bowman in litigation with the Debtor concerning the Truck for more than two (2) years prior to February 1, 2008 (i.e., the deadline for filing nondischargeability complaints), Bowman knew all it needed to know to file a nondischargeability complaint. Therefore, the Debtor contends that Bowman has failed to establish cause for an extension of time. Additionally, the Debtor complains that the grounds Bowman relied upon for seeking an extension of time at the April 9th hearing were different than those Bowman stated in the Extension Motion, impliedly suggesting that the grounds articulated on April 9th should not be considered because they were not set forth in the Extension Motion.

## VI. DISCUSSION

### A.

Much of the case law regarding what constitutes "cause" for an extension of time under Rule 4007 is not particularly helpful in determining whether "cause" exists in this case. Frequently, creditors requesting an extension under Rule 4007(c) assert that "cause" exists because they need to conduct further investigation before they can determine whether it would sensible and appropriate to file a §523(a) adversary complaint. In such a setting, whether the creditor has exercised due diligence is a highly relevant factor. See In re Desiderio, 209 B.R.

12

342, 345 (Bankr. E.D. Pa. 1997).[13]

Here, Bowman makes the "traditional" argument for an extension (i.e., it contends that time is needed to obtain the deposition of the deputy sheriff that is detained in Iraq),[14] but also contends, albeit in a convoluted fashion, that cause exists based on the third factor articulated in Stonham (i.e., that proceedings pending in another forum might eliminate the need for further litigation in the bankruptcy court). Resolution of this issue is rendered somewhat more complex by the manner in which Bowman's attorney presented the Extension Motion.

Having carefully considered the evidentiary record, the parties' arguments, and the relevant authorities, and for the reasons following, I conclude that Bowman has demonstrated sufficient cause to warrant an extension of time under Rule 4007(c).

**B.**

To begin, I construe Bowman's Stay Motion and Extension Motion, taken together, to assert that cause exists for the extension of the deadline for filing a nondischargeability complaint based on the potential "economy" that may be obtained for the parties and the court by permitting the state court litigation to be completed before proceeding with bankruptcy

---

[13] I do not find Bowman's diligence to be an issue -- both parties have been diligently engaged in litigation over this Truck for over 2 years.

[14] See n.12, supra. To be sure, Bowman has undercut this argument to some extent, by filing its §523(a) Complaint without taking the deposition of this sheriff. However, in light of my disposition of the Extension Motion on other grounds, it is unnecessary to decide whether the "traditional" argument is meritorious.

dischargeability litigation.[15]  I will consider this argument in support of the Extension Motion because I find it to be inherent in the two (2) simultaneously filed motions, even though it was not articulated squarely in the Extension Motion.

Together, the two (2) motions requested that I permit the state court litigation to resume and that nondischargeability litigation in the bankruptcy court be deferred.  Most tellingly, in its Stay Motion, Bowman clearly indicated its intent to return to the bankruptcy court with respect to the issue of damages after the conclusion of the CP Court litigation and the Order granting Bowman's Stay Motion specifically retained jurisdiction on damages.

I read the reference to "damages" in the Stay Motion to express Bowman's intention to request a determination that the debt is nondischargeable and the liquidation of the debt in this court.  It can hardly mean anything else.  Further, it appears that the Debtor understood the reference in much the same way.  In consenting to the grant of relief from stay, the Debtor carefully reserved all of his rights with respect to the damages issue "until such time [as the] Court enters an Order in response to [Bowman's] request [for an extension of time]."  Debtor's Response to Bowman's Motion to Modify Stay, at ¶3.  Clearly, everyone understood that the two (2) Motions were interrelated.

Read together, the two (2) motions not only suggested that "cause" for a §523(a) extension exists for reasons of economy for the court and the parties, but also put the Debtor on notice, within the Rule 4007(b) time deadline, of Bowman's intent to pursue its rights under §523(a).  For this reason I conclude that reaching the merits of Bowman's "economy" argument

---

[15]     I recognize that Bowman has already filed its §523(a) Complaint.  However, if Bowman is not granted an extension of time, that §523(a) Complaint would be untimely.

14

does not undermine the purposes of the strict time deadline imposed by Rule 4007(b) – fostering the prompt administration of bankruptcy cases and furthering the Code's fresh start policy by providing finality as to the scope of the debtor's discharge as promptly as possible.[16] Nor am I concerned that the Debtor was prejudiced by Bowman's failure to fully flesh out the argument until the day of the April 9th hearing because it is based entirely on undisputed facts.

### C.

The outcome, then, depends on whether I find Bowman's "economy" argument provides "cause" for extending the Rule 4007(c) deadline.[17] I do.

I find it compelling that, with relief from the stay having been granted, the CP Court may make findings that may act as collateral estoppel with respect to material issues in the nondischargeability action. Additionally, as Mr. Geisenberger has conceded, if Bowman does not succeed in its efforts to obtain a favorable final ruling on the possession/ownership issue in

---

[16] In re Brady, 234 B.R. 652, 658 (Bankr. E.D. Pa. 1999), aff'd, 243 B.R. 253 (E.D. Pa. 2000); accord Matter of Bercier, 934 F.2d 689, 692 n.6 (5th Cir. 1991); In re Summit Corp. 109 B.R. 534, 537 (D. Mass. 1990).

[17] As I stated during the hearing, to accomplish the same result, Bowman could have filed the §523(a) Complaint and then promptly file a motion to suspend activity in the adversary proceeding pending completion of the state court litigation. Had it done so, there would be no timeliness issues under Rule 4007(c). If I were unpersuaded by the "economy" argument, the only consequence would have been that the §523(a) litigation would proceed in this court. Instead, Bowman took a much riskier approach: filing a motion to extend the time, allowing the deadline for filing the adversary complaint to pass and depending upon the court to find that Bowman's "economy" argument provides cause for extending the filing deadline. Under this approach, if I am unpersuaded by that "economy" argument, Bowman is "out of court" (assuming that I also were to reject the other bases for "cause" asserted).

the CP Court, it will be unnecessary for the parties to litigate a nondischargeability claim in bankruptcy court because a material fact will have been determined adversely to Bowman. For this reason, I find that cause exists to grant Bowman the requested extension of time with respect to its nondischargeability claim on the grounds identified as number 3 in Part V above.

Specifically, I conclude that permitting the issues of ownership and possession of the Truck to be litigated to a final resolution in the CP Court before embarking on litigation with respect to Bowman's nondischargeability claim here is an efficient approach that is likely to conserve party and judicial resources. This constitutes "cause" for extending the deadline for filing a §523 dischargeability complaint.[18] See, e.g., In re Weinstein, 234 B.R. 862 (Bankr. E.D.N.Y. 1999) (granting creditor extension of time to file nondischargeability complaint where parties were already prosecuting securities claim in prepetition arbitration, where creditor had filed concurrent stay relief motion to continue that arbitration, and where arbitration might resolve whether creditor had a nondischargeability claim to pursue); see also In re Gotay, 2005 WL 3789330 at *3 (Bankr. S.D.N.Y. Aug. 30, 2005) (denying motion for extension of time but analyzing as factor relevant to determination of "cause" whether proceedings pending in another forum may effect issues relevant to nondischargeability claim); In re Nowinski, 291 B.R. 302, 306 (Bankr. S.D.N.Y. 2003) (same).[19]

---

[18] Consequently, I need not and do not decide whether Bowman's other asserted grounds for requesting an extension of time (i.e., grounds 1 and 2 discussed in Part V, supra, and Bowman's asserted need to depose the deputy that is detained in Iraq) constitute "cause" under Rule 4007(c).

[19] In responding to Bowman's economy argument, the Debtor pressed the argument that notwithstanding Bowman's economy rationale for requesting an extension of time, Bowman still could have gone forward with the filing of its nondischargeability complaint. That may be true. See n.17, supra. However, it does not alter my conclusion that the economy argument is meritorious and provides cause under Rule 4007(c) for extending the Rule 4007(b) deadline.

In reaching this determination, I am also guided by the general principle that the Bankruptcy Rules and the deadlines provided in the Rules should be construed and, where appropriate, extended, "in a manner consistent with the [Bankruptcy] Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case." In re Weinstein, 234 B.R. at 866; see also In re Nowinski, 291 B.R. at 305 (in deciding a Rule 4004(b) motion for an extension of time, determining that cause "should be narrowly construed to promote the prompt resolution of the case and the implementation of the debtor's 'fresh start'"). Permitting the two (2) CP Court actions, one of which was already in the process of being scheduled for trial at the time the Extension Motion was argued, to conclude before requiring the bankruptcy litigation to commence (or, given Bowman's filing of the §523(a) Complaint subsequent to the filing of the Extension Motion, to proceed any further) appears to be the most prompt and efficient means of resolving Bowman's nondischargeability claim.

### D.

Before concluding this Memorandum, I briefly address one other issue.

In his response to the Extension Motion, the Debtor challenged Bowman's asserted grounds for cause by observing that the Debtor had already testified in bankruptcy court on November 1, 2005 (in connection with the Debtor's Replevin Action), and in the CP Court on January 19, 2006, January 26, 2006 and February 15, 2006. Contending that Bowman had established no need to obtain additional testimony from the Debtor to prepare a nondischargeability complaint and that the grounds asserted in the Extension Motion were accordingly baseless, the Debtor requested fees and costs associated with opposing the Extension

Motion.

While I find that Bowman has established "cause" for the extension it requested, I am nonetheless disturbed by Bowman's written assertion that it lacked sufficient information to file an adversary complaint asserting claims under 11 U.S.C. §523(a), an argument that was quickly abandoned once the Extension Motion proceeded to a hearing.

That said, the Debtor has not properly brought the propriety of Bowman's conduct or the conduct of its counsel and its request for counsel fees before me.  See, e.g., Fed. R. Bankr. P. 9011(c) ("[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct . . . ."); see also In re Kitchin, 327 B.R. 337, 359 (Bankr. N.D. Ill. 2005) ("[p]arty-initiated sanctions must proceed by motion and meet the procedural requirements of Rule 9011(c)(1)(A); Glutzer v. Prudential Ins. Co. of Am., 183 F.R.D. 632, 639 (N.D. Ill. 1999) (denying request for Rule 11 sanctions where raised in response to summary judgment motion; Rule 11 requires that a motion for sanctions be made separately from other motions and includes its own procedural requirements); Omego Sports, Inc., v. Sunkyong Am., Inc., 872 F. Supp. 201, 203 (E.D. Pa. 1995) (denying motion for Rule 11 sanctions because request was made as part of motion for remand rather than separately and request was not made in accordance with requirements of Rule 11).  To the extent that I am authorized to act sua sponte, see Fed. R. Bankr. P. 9011(c)(1)(B), I decline to do so.  Therefore, at this time, I need not and do not decide whether the Debtor is entitled to an award of counsel fees.  The Debtor retains the right to initiate an appropriate proceeding to vindicate his rights if he believes that any inappropriate conduct took place to his detriment that may be remedied under applicable law.

## VII.  CONCLUSION

For the reasons set forth herein, I conclude that the Bowman has met its burden of establishing cause to grant the Extension Motion.  An appropriate order will be entered granting the extension.  In addition, I will hold a pretrial conference in the pending adversary proceeding to obtain the parties' input regarding the appropriate pretrial management of the proceeding.

Date:   October 6, 2008

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE